WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Sprint Communications Co., L.P., ) | No. cv-06-2064-PHX-ROS |
| Plaintiff, ) | **ORDER** |
| vs. ) |  |
| Western Innovations, Inc., ) |  |
| Defendant. ) |  |

Pending before the Court are Defendant Western Innovations, Inc.'s Motion for Clarification (Doc. 212) and Defendant Western's Motion for Reconsideration (Doc. 213). For the reasons stated herein, Defendant's Motion for Clarification will be granted and Defendant's Motion for Reconsideration will be denied.

### STANDARD OF REVIEW

Generally, motions to reconsider are appropriate only if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." School Dist. No. 1J, Multnomah County, Or. v. AC&S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration may not be used to ask the Court "to rethink what the court had already thought through – rightly or wrongly." See Defenders of Wildlife v. Ballard, 73 F. Supp. 2d 1094, 1115 (D. Ariz. 1999) (citations omitted). Rather, such arguments

1   should be directed to the court of appeals.  Sullivan v. Faras-RLS Group, Ltd., 795 F.
2   Supp. 305, 309 (D. Ariz. 1992).

## ANALYSIS

### I.  Western's Motion for Clarification

5   In its March 9, 2009 Order, this Court found it was not appropriate to grant summary judgment to Defendants on the question of whether Plaintiff was entitled to loss of use damages.  (Doc. 211).  Western motions for clarification as to the appropriate amount of those damages, and seeks a finding that Sprint's calculations for loss of use damages are unreasonable.

10   The precedent cited by the Court amply demonstrates that the rental value of the back-up system for the required amount of time is the appropriate measure of damages. See, e.g., MCI Worldcom Network Services v. Atlas Excavating Inc., No. 02 C 4394, 2006 U.S. Dist. Lexis 88956 at *26 (N.D. Ill. 2006) ("[W]e find that the reasonable rental of a substitute cable is the appropriate measure of damages."); MCI Worldcom Network Services v. Kramer Tree Specialists, No. 02 C 7150, 2003 U.S. Dist. Lexis 10542 at *8 (N.D. Ill. 2003) (holding that "MCI [was] entitled to recover loss of use damages based on reasonable rental value for  Kramer's severance of its fiber optic cable."); AT&T Corp. v. Lanzo Construction Co., 74 F. Supp.2d 1223, 1225 (S.D. Fla. 1999) ("Florida law explicitly provides that loss of use damages are measured by the amount necessary to rent a similar article or other suitable article within which to perform the services usually performed by the damaged article during the period of repair.") The Court then found that "[t]here is [precedent] in Arizona of awarding market rental value as loss of use. . . . Given the lack of authority for a deduction due to depreciation or wear and tear as in Connecticut law and given the apparent general trend towards rental value in similar circumstances, that is the appropriate measure in this instance."

26   Given this, the answer to Western's question regarding whether "Sprint is entitled to seek an additional $576,000 in phantom construction costs to build a substitute cable

solely for the purpose of renting that cable for 4.76 hours" is that it is not.  The Court trusts from Sprint's Response to Western's Motion for Clarification, in which it states:

> Sprint argued that the rental cost of substitute property is a proper measure of Sprint's loss of use damages under Arizona law, that Sprint's loss of use damages do not include the cost to install a new 116-mile cable between Tucson and Phoenix, and that the reasonableness of the amount of loss of use damages Sprint claimed is a question of fact for the jury rather than for the Court,

that all parties are in agreement on this point.

## II.  Western's Motion for Reconsideration

Western asks the Court to reconsider its decision on whether Haydon was solely negligent, thus barring contractual indemnity and whether the subcontract applied to the installation of this particular sleeve.  In its March 9, 2009 Order, the Court found that as a matter of law  (a) the work was covered by a particular contract between Western and Haydon, (b) the damage done comes under a contractual indemnity provision, and (c) the provision is enforceable because the damage did not result from the sole negligence of Haydon.  Western contends that the work was not performed pursuant to the contract and that Haydon was, indeed, solely negligent.

Western, asserts that the contract was modified to exclude the installation of irrigation sleeves.  First, Western failed to make this argument in its earlier briefing, writing only that "Western Innovations was not scheduled to be at the project until at least a week after April 11, 2005."[1]  Because there is no reason this argument could not have been presented earlier, it is not appropriate to present for the first time in a Motion for Reconsideration.  Second, it is not supported by the evidence presented by Western sufficiently that this Court can declare that a clear error was made.  The deposition testimony  attached and pointed to by Western states only that "from the beginning of Phase 1 through Phase 3 most of the irrigational sleeves were installed by Beecroft, not by Western Innovations."  Because the contract lists possible work to be performed plus

---

[1] An argument which ignores the fact that the contractor could, under the contractual terms, set the time of performance.

- 3 -

1  prices and then allows the contractor to set the time of performance, the fact that Western
2  had not expected to perform this work does not demonstrate that the contract did not
3  cover it.
4       As to negligence, that decision was based on undisputed factual assertions that
5  were entered into the record, namely that Western failed to take certain generally
6  accepted safety measures and that safety tape was at some point exposed during the
7  excavation that went unnoticed or ignored. It was also based on the fact that Western had
8  both a contractual and common law duty to ascertain the location of underground
9  facilities and to excavate safely and cautiously.
10      Western's dispute with these findings does not rise to the level of showing
11 manifest error or injustice as required in this context, nor does newly discovered evidence
12 or intervening legal authority that might contravene the decision exist. Western's Motion
13 must be denied.
14      **IT IS SO ORDERED.**
15
16
17      DATED this 5th day of May, 2009.
18
19
20
21                                  Roslyn O. Silver
                                    United States District Judge
22
23
24
25
26
27
28